**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| **ALFREDO CHATMAN, Individually, and on Behalf of All Others Similarly Situated,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| | ) | **Case No. 1:12-cv-10209** |
| **v.** | ) ) | |
| | ) | **Honorable Charles R. Norgle, Sr.** |
| **PIZZA HUT, INC., MICHAEL JACKSON, MICHAEL LUSTER, and JGJ MANAGEMENT,** | ) ) ) ) | **Magistrate Judge Sidney I. Schenkier** |
| | ) | |
| **Defendants.** | | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT PIZZA HUT'S MOTION TO COMPEL BINDING ARBITRATION

Plaintiff, Alfredo Chatman, by his attorneys Stephan Zouras, LLP, opposes Defendant, Pizza Hut's, motion to compel binding arbitration and in support thereof, states as follows:

### I.    INTRODUCTION

Seeking to shield itself from judicial scrutiny of its pervasive wage violations, Defendant ("Pizza Hut" or "Defendant") asks this Court to deprive Mr. Chatman ("Mr. Chatman" or "Plaintiff") of his day in court based solely on his completion of an online employment application which included an arbitration clause. However, the arbitration clause lacks consideration. Even though Mr. Chatman had not formed any employment relationship at the time of its purported signing, Pizza Hut claims its arbitration clause prospectively binds Mr. Chatman to arbitrate all employment-related claims against it without mutually binding Pizza Hut. Further, Pizza Hut attempts to compel arbitration for all Defendants even though it is the only Defendant seeking to compel arbitration and the others never executed an arbitration clause. As a result, this Court should deny Pizza Hut's motion to compel arbitration.

Alternatively, should this Court conclude that Mr. Chatman formed a binding agreement to arbitrate his future unpaid wage claims, the Court should hold that he may pursue his claims as a class action because the online application ("application") memorializes the parties' agreement to adjudicate class claims at arbitration. Specifically, the application provides that the parties may limitlessly arbitrate **"*any claims*"** arising out of Mr. Chatman's employment. (Dkt. No. 16-2 at 4).

The agreement's language clearly permits Plaintiff to bring class actions in arbitration. No other logical interpretation can be applied to the agreed-upon requirement to arbitrate "any claims" arising out of Plaintiff's employment. At the very least, the agreement is ambiguous in that respect, and under ordinary contract rules of construction, that ambiguity must be decided in favor of Plaintiff and against Pizza Hut as the drafter.

But even if the applicable agreement does not expressly authorize Plaintiff to globally pursue all actions arising out of his employment, a long line of cases interpreting arbitration agreements in accordance with the United States Supreme Court's decision in *StoltNielsen S.A. v. Animalfeeds Int 'l Corp.,* recognize that broad language requiring parties to arbitrate all claims and disputes manifest an agreement to arbitrate class and collective actions. Under this consistent line of cases, the Court should find that the parties here agreed to arbitrate Plaintiff's action on a class basis.

## II.    BACKGROUND

On August 11, 2010, Mr. Chatman applied for the hourly-paid position of "delivery driver" with Pizza Hut. (Dkt. No. 16-2 at 4). In order to be considered for the position, Mr. Chatman had to complete the application. (Ex. O – Declaration of Alfredo Chatman at ¶2). The application contained a section titled "Terms and Conditions" (Dkt. No. 16-2 at 4), which included the following statement:

> Because of the delay and expense of the court systems, Pizza Hut and I agree to use confidential binding arbitration, instead of going to court, for ***any claims*** that arise between me and Pizza Hut, its related companies, and/or their current or former employees. Without limitation, such claims would include any concerning compensation, employment (including, but not limited to, any claims concerning sexual harassment or discrimination), or termination of employment.

*Id*. at 3 (emphasis added).

The Terms section further states:

> In any arbitration, the prevailing employment dispute resolution rules of the American Arbitration Association will apply, except that Pizza Hut will pay the arbitrator's fees, and Pizza Hut will pay that portion of the arbitration filing fee in excess of the similar court filing fee had I gone to court.

*Id.*

According to Pizza Hut, by filling out the online application Mr. Chatman contractually agreed to the following:

> I understand that any omission, misrepresentation, or falsification in connection with this application process may be grounds for denial of employment or, if hired immediate termination of employment. I further understand that if I am hired by Pizza Hut, I must abide by all the rules and policies of Pizza Hut which, other than the at-will employment policy, may be changed without notice at the direction of Pizza Hut.

*Id.* at 4.

When Mr. Chatman filled out the online application, he literally had no relationship of any kind with Pizza Hut much less any guarantee of a job. (Ex. O at ¶3). Mr. Chatman worked for Pizza Hut from August, 2010 to December, 2012. (Ex. O at ¶1). During his employment, he was never informed or asked to bind himself to any arbitration policy. (Ex. O at ¶5). Mr. Chatman did not execute any agreement which purportedly obligated him to arbitrate his claims during his employment with Pizza Hut or any of the other Defendants. (Ex. O at ¶6).

In 2011, after Mr. Chatman completed the application, JGJ Management, Michael Jackson, and Michael Luster took over the Pizza Hut where Mr. Chatman worked. (Ex. O at ¶7).

Pizza Hut does not suggest – and no evidence exists – that Mr. Chatman agreed to arbitrate his disputes with any of these parties. (Dkt. No. 16).

On November 15, 2012, Plaintiff filed this action, in state court, on behalf of himself and all other similarly situated employees. (Ex. P – Complaint). Defendants then removed the case to this court. (Dkt. No. 1). Now Pizza Hut is attempting to move this action once again, to arbitration. (Dkt. No. 16). JGJ Management, Michael Jackson and Michael Luster, however, have not asked this court to compel arbitration and have no basis to do so. Thus, granting the instant motion would result in Mr. Chatman having to litigate his claims in two separate forums.

### III.    ARGUMENT

**A. Pizza Hut Has Failed to Meet its Burden of Proving the Existence of a Valid Agreement to Arbitrate as a Matter of Law.**

#### 1. The Online Application Lacks Consideration

Pizza Hut's Arbitration Policy is unenforceable because it was not supported by consideration. The validity of Defendant's Arbitration Policy is determined by looking to Illinois state contract law. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002). An agreement to arbitrate is treated like any other contract. *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F. 3d 1126, 1130 (7th Cir. 1997). If a contract does not exist, there cannot be forced arbitration. *Id.* Defendant, as the parties seeking to enforce an alleged contract, has the burden of establishing its validity. *IMI Norgen, Inc. v. D & D Tooling MFG., INC.*, 306 F. Supp. 2d 796, 802 (N.D.Ill. 2004)

For a contract to be binding, both parties must be bound by the terms of the agreement, and the promissee must give some consideration for the promise made by the promisor. *Serpe v. Williams*, 776 F. Supp. 1285, 1288 (N.D.Ill. 1991). Consideration is defined as a "bargained for exchange whereby the promisor receives some benefit or the promisee suffers a detriment."

*Gibson,* 121 F.3d at 1130 (citations omitted); *Geiger v. Ryan's Family Steak Houses, Inc.*, 134 F. Supp. 2d 985, 1000 (S.D.Ind. 2001) ("[T]here can be no contract unless both parties are bound.")

*Geiger* is directly on point. There, the Court denied defendants' motion to compel arbitration on the basis that no consideration was given to the plaintiffs when they filled out an employment application with an arbitration clause. 134 F.Supp. 2d 85 at 1002. Importantly, the Court found that the Defendants were not bound by their promise to arbitrate because the arbitration agreement contained an escape clause where the Defendants could change their policies within ten days' notice. *Id.* at *1001. The Court further held that the application was simply a promise to consider the plaintiffs for employment, which was not enough consideration to allow the Court construe the arbitration agreement as a binding contract. *Id.*

Defendant's motion is predicated upon virtually identical facts. Like the plaintiff in Geiger, when Mr. Chatman completed the online application for employment he received no consideration. Defendant argues "Plaintiff's arbitration obligation is plainly supported by adequate consideration in the form of Pizza Hut's corresponding obligation likewise to submit to arbitration." (Dkt. No. 16 at 9). However, Defendant conspicuously fails to mention that the online application that Mr. Chatman completed states, "I further understand that if I am hired by Pizza Hut, I must abide by all the rules and policies of Pizza Hut which, other than the at-will employment policy, ***may be changed without notice at the direction of Pizza Hut.***" (Dkt. No. 16-2 at 4) (emphasis added).

Just as in *Geiger*, Pizza Hut's "escape clause" destroys any consideration Plaintiff might have other received in exchange for his agreement to arbitrate because the Defendant itself is not bound. Pizza Hut's application, which authorizes it to unilaterally alter its promise to arbitrate without notice, is even more illusory than the escape clause in *Geiger*, which gave the applicant

up to ten days' notice. The clause in the online application authorizes Pizza Hut to decide, at its sole discretion and without any notice, to pick and choose which disputes it will arbitrate.

Defendants cannot claim that the consideration for Mr. Chatman's agreement to arbitrate is its promise to process his application. When Mr. Chapman completed the application, he was not employed and could not have possibly had any claims against Pizza Hut which, at the time, was merely a prospective employer. Thus, the only benefit Mr. Chatman received from his agreement to arbitrate, was merely a promise by Pizza Hut to consider his application. It was not a promise to employ him. If Pizza Hut wanted to ensure that the arbitration policy in the employment agreement was supported by valid consideration, it could have easily asked Mr. Chatman to execute an agreement after he was employed and after any claims would have arisen. However, Mr. Chatman has not seen the arbitration policy since he filled out his application. The policy was never discussed by Pizza Hut, nor did Mr. Chatman ever sign an arbitration agreement after he was an employee. As a result, the arbitration clause was not supported by consideration and is therefore, unenforceable. Consequently, this Court should deny Defendant's motion to compel arbitration.

## 2. Even if Valid, the Arbitration Clause Does Not Apply to all Defendants.

This lawsuit was not brought solely against Pizza Hut, but was also brought against the franchisee, JGJ Management, and the franchisee's current owners, Michael Jackson and Michael Luster. If the Court decides to grant Pizza Hut's motion to compel arbitration, it should not compel arbitration as to all Defendants. JGJ Management, Michael Jackson and Michael Luster have not moved to compel arbitration. Additionally, the online application that Mr. Chatman completed was for a position with Pizza Hut. The application was not an application for employment with JGJ Management, Michael Jackson or Michael Luster and it, at most applies

only to disputes against "current or former employees." (Dkt. No. 16-2 at 4). Indeed, at the time Mr. Chatman completed the application, these defendants had no affiliation with Pizza Hut. And once they took over the management of Mr. Chatman's location, they did not institute any alleged arbitration agreement. Thus, these defendants, who have not moved to compel arbitration, cannot benefit from an arbitration agreement they indisputably never signed and are not parties to. Accordingly, this Court should deny Pizza Hut's motion to compel with respect to any Defendants who have not sought arbitration.

**B. Alternatively, if This Court Compels Arbitration, it Should Also Compel the Defendants to Arbitrate Plaintiff's Claims on a Class Basis.**

    **1. The Agreement Expressly Requires Plaintiff to Arbitrate "Any Claims" Arising Out of His Employment**.

Even if the online application is valid, it expressly authorizes the parties to arbitrate class actions.[1] Recently, the United States Supreme Court made clear that arbitration agreements must be enforced "according to their terms." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (U.S. 2011); *accord*, *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 130 S. Ct. 1758, 1773-74 (2010). In doing so, the Supreme Court emphasized that the arbitrators must look to "the arbitration agreement itself *or some background principle of contract law that would affect its interpretation*." *AT&T Mobility*, 131 S. Ct. at 1750 (*emphasis added*).

Here, Defendant's online application indisputably states: "Because of the delay and expense of the court systems, Pizza Hut and I agree to use binding arbitration, instead of going to court, for ***any claims*** that arise between me and Pizza Hut, Its related companies, and/or their current or former employees. Without limitation, such claims would include ***any concerning compensation***…" (Dkt. No. 16-2 at 4) (emphasis added). Accordingly, the online application is

---

[1] As this Court recently acknowledged, the question of whether the court or the arbitrator determines whether an agreement permits class arbitrations "remains open at the Seventh Circuit." *Price v. NCR Corp.,* 2012 WL 6103205 (N.D.Ill. Dec. 10, 2012).

NOT silent on the scope of Plaintiff's claims because it permits "***any claims***," including class action claims that arise out of Plaintiff's employment. Moreover, had Defendant intended the online application to exclude class actions, it could have easily stated so. Surely, Pizza Hut, a sophisticated international corporation represented by one of the largest law firms in the world, is familiar with class action waivers. However, a plain reading of Defendant's online application reveals that it contains no such waiver or other exclusions.

Applying the rules of contract law, the only reasonable interpretation of the phrase "***any claims***" is that all legal actions—including class actions—must be resolved at arbitration. At the very least, the adhesion contract language is ambiguous and should be interpreted against Pizza Hut because it drafted the adhesion contract. *See Duldalao v. St. Mary of Nazareth Hosp. Ctr.,* 115 Ill.2d 482, 493 (1987); *Thompson v. Amoco Oil Co.* 903 F. 2d 1118 (7th Cir. 1990). As a result, the online application expressly allows class actions in arbitration.

This conclusion is further bolstered by the fact that the online application explicitly requires the parties to follow the Employee Dispute Resolution Rules of the American Arbitration Association: "In any arbitration, the then prevailing employment dispute resolution rules of the American Arbitration Association will apply." (Dkt. No. 16-2 at 4) AAA's Rules explicitly provide for class actions. *See* AAA Supplementary Rules for Class Arbitrations, effective October 8, 2003, Rule 3. Thus, if the online application applies, it expressly authorizes class actions in arbitration. Accordingly, Defendant's motion must be denied.

**2. Even if the Agreement Does Not Expressly Authorize Class Actions, it Implicitly Authorizes Them.**

Assuming arguendo that the agreement does not expressly authorize class actions, it does so implicitly. The United States Supreme Court has never held that the agreement to arbitrate must contain an explicit authorization to proceed as a class. To the contrary, the Supreme Court

has recognized that arbitrators must look to "the arbitration agreement itself or some background principle of contract law that would affect its interpretation." *AT&T Mobility v. Concepcion*, 131 S. Ct at 1750.

When interpreting similar arbitration agreements that broadly require arbitration of all employment disputes between the parties, but that do not expressly permit or prohibit class actions post *Stolt-Nielson and AT&T Mobility*, AAA Arbitrators have repeatedly concluded that these arguments do not prohibit class or actions. For example, an AAA Arbitrator was called upon to determine whether the following provision precluded class actions:

> As a condition of my employment with Roto-Rooter Services Company, ***I hereby agree that I will settle any and all claims, disputes or controversies*** arising out of or relating in any way to my application for employment, employment and/or cessation of employment exclusive by final and binding arbitration before the American Arbitration Association under its Employment Dispute Resolution Rules, and I agree that judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. By way of example only, such claims include claims under federal, state and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, Civil Rights Act of 1866, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, the law of contract and law of tort.

*Colquhuon v. ChemEd Corp.,* AAA Case No. 11-160-001581-10, at *2-3 (May 6, 2011) (emphasis added) (attached as Exhibit A - Unpublished Opinions).

In concluding that the parties agreed to class arbitrations, the Arbitrator looked to language of the agreement itself. *Id.* at 13 The Arbitrator found that the employer's decision to use broad, expansive, and limitless terms to describe the disputes subject to arbitration was critical and determinative of its intent. *Id.* at 13-16. Similar to this case, the arbitration clause did not specifically mention class actions. *Id.* at 15. Consequently, the Arbitrator found that because each of the delineated statutory claims are often enforced on a class basis, it was reasonable to conclude the employer intended to arbitrate all conceivable employment claims,

including class and collective wage-and-hour actions. *Id.* The Arbitrator reasoned that any other interpretation was unreasonable and unfair, finding "it would be incongruous to construe the [agreement] to permit Respondents to pick and choose which sections of which statutes are arbitrable and which are not." *Id*. at 19.

*Colquhoun* represents only one of the latest in a long line of AAA decisions, including at least five decided <u>after</u> *Stolt-Nielsen*, in which virtually identical arbitration provisions were found to manifest the parties' intent to arbitrate on a class basis, even though the arbitration agreement did not expressly permit class arbitrations. *Sutter v. Oxford Health Plans, Inc.,* AAA 18-13-20593-02 at 7-8 (August 13, 2010) (holding that broad arbitration provision authorized class actions in arbitration, stating "[n]o civil action concerning any dispute arising under this agreement shall be instituted before any court, and all such disputes shall be submitted to final binding arbitration"); *SWLA Hospital Associates v. Corvel Corporation*, AAA 11-193-02760-06 at 16-17 (Sept. 3, 2010) (concluding that provision calling for arbitration of "any and all matters in controversy" contemplated the right to assert claims as a class); *Benson v. CSA-Credit Solutions of America, Inc.,* AAA 11-160-M-02281-08 at 6-9 (July 6, 2010) (holding use of phrase "any dispute or claim relating to or arising out of the employment relationship or the termination of the employment relationship" is broad enough to permit class arbitrations) (emphasis added); accord, *Passow v. The Smith & Wollensky Restaurant Group, Inc., AAA* 11-160-00357-08 at 9-10 (July 28, 2010) (concluding that arbitration provision stating that "both you and the Company mutually agree to resolve and [sic] binding arbitration any claim that, in the absence of this Agreement, would be resolved in a court of law under applicable state or federal law" allows class arbitrations); *Knudsen v. North Motors, Inc.,* AAA 11-155-02699-09 at 5-6 (May 18, 2010) (same finding where provision required arbitration of "any and all claims or

10

disputes between the parties to this Agreement."); *Hoffman v. Arthur Anderson*, AAA 11-180-01410-05, at *4-7 (Mar. 23, 2006) (same holding reached where provision required "[a]ny and all disputes which cannot be settled amicably ... shall be finally settled by arbitration."); *Warrior Transportation v. FFE Transportation Services, Inc*., AAA 11-118-00365-05 (Aug. 18, 2005) (same holding reached with respect to similar provision); *Sidhu v. GMRI, Inc.,* AAA 11-160-02273-04 (June 10, 2005) (same); *Levitt v. Lipper Holding, LLC,* AAA 11-168-00663-04 (May 20, 2005) (same); *Cole v. Long John Silver 's Restaurants, Inc.,* AAA 11-160-00194-04 (Jan, 15, 2004) (same) (Attached as Exhibits B-K - Unpublished Opinions). Courts endorse and approve these arbitration decisions and their rationale on appeal. *See,* e.g., *Sutter v. Oxford Health Plans,* LLC, 2011 WL 734933, at *4-5 (D.N.J. Feb. 22, 2011); The *Smith & Wollensky Restaurant Group, Inc. v. Passow,* 2011 U.S. Dist. LEXIS 4495, at *2-3 (D.Mass. Jan. 18, 2011) (Attached as Exhibits L-M - Unpublished Opinions).

Recently, the Second Circuit Court of Appeals followed the same path and reversed a district court which held that a similar broadly-worded arbitration provision somehow precluded class arbitrations. *Jock v. Sterling Jewelers Inc.,* 646 F.3d 113 (2d. Cir. 2011). In *Jock,* the provision stated as follows:

> I hereby utilize the Sterling RESOLVE program *to pursue any dispute, claim, or controversy ("claim")* against Sterling ... regarding any alleged unlawful act regarding my employment or termination of my employment which could have otherwise been brought before an appropriate government or administrative agency or in a [sic] appropriate court, including but not limited to, claims under ... Title VII of the Civil Rights Act of 1964; the Civil Rights Act of 1991,...the Fair Labor Standards Act... I understand that by signing this Agreement I am waiving my right to obtain legal or equitable relief (e.g. monetary, injunctive or reinstatement) through any government agency or court, and I am also waiving my right to commence any court action. I may, however, seek and be awarded equal remedy through the RESOLVE program. The Arbitrator shall have the power to award any types of legal or equitable relief that would be available in a court of competent jurisdiction including, but not limited to, the costs of

> arbitration, attorney fees and punitive damages for causes of action when such damages are available under law.

Id. at 5-6 (emphasis added).

The Second Circuit held that the lower court incorrectly vacated the Arbitrator's conclusion, based on *Stolt-Nielsen*, that the broad wording of the provision "cannot be construed to prohibit class arbitration." *Id.* at 7. The Court emphasized that the Arbitrator properly discerned the parties' intent by applying New York state rules of contract construction. *Id.* at 6. In upholding the Arbitrator's decision, the Court relied upon the fact that "[the] contract was drafted by [the employer] and was not the product of negotiation, [therefore] it was incumbent on [the employer] to ensure that all material terms, especially those adverse to the employee, were clearly expressed." *Id.* at 6.

The Second Circuit further held that the lower court incorrectly vacated the Arbitrator's conclusion, based on *Stolt-Nielsen*, that the broad wording of the provision "cannot be construed to prohibit class arbitration." *Id.* at 7. The Court emphasized that the Arbitrator properly discerned the parties' intent by applying state rules of contract construction. *Id*. at 6. In upholding the Arbitrator's decision, the Court relied upon the fact that "[the] contract was drafted by [the employer] and was not the product of negotiation, [therefore] it was incumbent on [the employer] to ensure that all material terms, especially those adverse to the employee, were clearly expressed." *Id*. at 6.

Here, a plain reading of the Agreement likewise reveals that Pizza Hut expansively used the broadest of terms to describe the disputes covered by its agreement. The Agreement limitlessly applies to:

> ***any claims*** that arise between me and Pizza Hut, Its related companies, and/or their current or former employees. Without limitation, such claims would include ***any concerning compensation***, employment(including but not limited to, any

claims concerning sexual harassment or discrimination), or termination of employment.

(Dkt. No. 16-2 at 4) (emphasis added). The Agreement contains no limitations on the phrase "*any claims*" despite the fact that Pizza Hut easily could have excluded class actions if that was its intent.

Pizza Hut claims that *Stolt-Nielsen* precludes Plaintiff from proceeding as a class action because of the absence of a statement in the Agreement expressly using the term "class actions." But this interpretation is contrary to ordinary contract interpretation. In a cogent opinion, one federal district court recognized that an express authorization of class actions is not required under *Stolt-Nielsen*:

> [The employer] essentially argues that because the parties' arbitration agreement does not state that class action arbitration is allowed, [the Arbitrator] 'exceeded his powers' by not vacating the Partial Award in light of *Stolt-Nielsen*. That interpretation of *Stolt-Nielsen*, however, is not supportable in the present context. While the insertion of the words "class action" to the parties' agreement would certainly obviate this dispute, as [the Arbitrator] correctly noted in [his order], *Stolt-Nielsen* does not categorically require the presence of such terms for class arbitration. To the contrary, in *Stolt-Nielsen*, the Court expressly declined 'to decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration.' Here, after giving full consideration to *Stolt-Nielsen*, [the Arbitrator] concluded that the contractual basis between these parties, i.e., their arbitration agreement, clearly and unambiguously expressed their intent to authorize class action arbitration despite omission of the words "class action."

*Sutter*, supra, 2011 WL 734933 at *4 (citing *Stolt-Nielsen*, 130 S.Ct. at 1776, fn. 10) (emphasis added); *Jock, supra; Demetriou v. Earthlink*, Inc., AAA 11-117-00273-10, at 9 (Sept 1, 2010) (same) (Attached as Exhibit N – Unpublished Opinion).

Thus, the Supreme Court in *Stolt-Nielsen* reaffirmed a long line of authority, which continued after its decision, recognizing that arbitration agreements can expressly or implicitly permit class actions, which was the result in each of the cases cited above based on the broad

language used to describe the scope of claims subject to arbitration. *See Missigman v. USI Ne., Inc.,* 131 F. Supp. 2d 495, 512 (S.D.N.Y. 2001) (recognizing "[a]n implied-in-fact contract is 'just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct.'") (quoting *Ellis v. Provident Life & Accident Ins. Co.,* 3 F. Supp. 2d 399 (S.D.N.Y. 1998).

Based on the plain language of the online application, Pizza Hut clearly intended to require aggrieved employees to resolve all claims, disputes, and actions—including class actions—through arbitration. Accordingly, Pizza Hut intended and indeed required their employees to arbitrate all employment disputes, including class actions.

The United States Supreme Court has recognized that the plain language of a broad arbitration provision agreeing to "settle all disputes" between the parties permits all forms of relief that would have been available if the action were brought in court, as follows:

> Were we to confine our analysis to the plain language of the arbitration clause, we would have little trouble concluding that a contract clause which bound the parties to 'settle all disputes' through arbitration conducted according to rules which allow any form of 'just and equitable' `remedy of relief' was sufficiently broad to encompass the award of punitive damages. Inasmuch as agreements to arbitrate are 'generously construed,' it would seem sensible to interpret the 'all disputes' and 'any remedy or relief' phrases to indicate, at a minimum, an intention to resolve through arbitration any dispute that would otherwise be settled in a court, and to allow the chosen dispute resolvers to award the same varieties and forms of damages or relief as a court would be empowered to award. Since courts are empowered to award punitive damages with respect to certain types of claims, the Raytheon-Automated arbitrators would be equally empowered.

*Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 61 (1995) (emphasis added) (internal citation and quotation marks omitted).

Because courts are empowered to permit class actions, the broad language in the applicable agreement agreeing to arbitrate **"*any claims*"** arising out of the employment relationship authorizes class actions in arbitration. Thus, by applying contract construction rules,

14

the Arbitration Agreement must be construed to authorize and require the arbitrability of class disputes in the absence of explicit language.

## IV.    CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court enter an order denying Pizza Hut's motion to compel arbitration.   In the alternative, should this Court compel arbitration, Plaintiff respectfully requests that this Court order Plaintiff's claims to proceed at arbitration on a class basis.


Dated: February 13, 2013                Respectfully Submitted,


                                        */s/ Mark B. Goldstein*
                                        Stephan Zouras, LLP
                                        205 N. Michigan Avenue, Suite 2560
                                        Chicago, Illinois 60601
                                        312-233-1550
                                        312-233-1560 f
                                        www.stephanzouras.com

                                        **ATTORNEYS FOR THE PLAINTIFFS**

15

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT PIZZA HUT'S MOTION TO COMPEL BINDING ARBITRATION was served upon the following parties via this Court's ECF filing system, this 13th day of February, 2013:

> Jason Englund
> Sarah M. Konsky
> SIDLEY AUSTIN LLP
> One South Dearborn Street
> Chicago, IL 60603
> jenglund@sidley.com
> skonsky@sidley.com

                                        /s/ Mark B. Goldstein
                                         Mark B. Goldstein

16