IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALFREDO CHATMAN, individually and on )
behalf of all others similarly situated, )
                                            )
                   Plaintiff, )
                                            )   No. 12 C 10209
v. )
                                            )   Judge Charles R. Norgle, Sr.
                                            )   Magistrate Judge Sidney I. Schenkier
                                            )
PIZZA HUT, INC., MICHAEL JACKSON, )
MICHAEL LUSTER, and )
JGJ MANAGEMENT, )
                                            )
                   Defendants. )

## MEMORANDUM OPINION AND ORDER

On November 15, 2012, Plaintiff Alfredo Chatman filed a class action complaint in state court on behalf of himself and all other similarly situated employees, asserting claims against defendant Pizza Hut, Inc. ("Pizza Hut"), and franchise owners Michael Jackson, Michael Luster, and JGJ Management (the "JGJ Defendants") under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS § 115/1, *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1, *et seq.* These claims all arise out of the plaintiff's employment as a Pizza Hut delivery driver. On December 20, 2012, Pizza Hut removed the case to this Court (doc. # 1), and on January 10, 2013, Pizza Hut filed a motion asking the Court to compel arbitration of the plaintiff's claims against Pizza Hut, order that arbitration proceed on an individual basis, and stay these proceedings pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3 (docs. ## 15, 16: Defendant Pizza Hut's Memorandum of Law in Support of Its Motion to Compel Arbitration and Stay Proceedings ("Def.'s Mem.")).

The case has been referred to this Court for ruling on all nondispositive motions (doc. # 13), and the present motion has now been fully briefed. For the reasons that follow, the Court grants Pizza Hut's motion to compel arbitration; denies Pizza Hut's motion seeking an order directing arbitration to proceed on an individual basis; and grants in part its motion to stay proceedings.

## I.

On August 11, 2010, Mr. Chatman electronically signed and submitted to Pizza Hut an online job application (Def.'s Mem., Ex. B at 3-4; Pl.'s Mem., Ex. O at ¶ 2). The application contains a number of terms and conditions, one of which is entitled, "Agreement to Arbitrate" ("Arbitration Provision"), which states:

> Because of the delay and expense of the court systems, Pizza Hut and I agree to use confidential binding arbitration, instead of going to court, for any claims that arise between me and Pizza Hut, its related companies, and/or their current or former employees. Without limitation, such claims would include any concerning compensation, employment (including, but not limited to, any claims concerning sexual harassment or discrimination), or termination of employment. Before arbitration, I agree: (i) first to present any such claims in full written detail to Pizza Hut; (ii) next, to complete any Pizza Hut internal review process; and (iii) finally, to complete any external administrative remedy (such as with the Equal Employment Opportunity Commission or National Labor Relations Board).
>
> In any arbitration, the then prevailing employment dispute resolution rules of the American Arbitration Association will apply, except that Pizza Hut will pay the arbitrator's fees, and Pizza Hut will pay that portion of the arbitration filing fee in excess of the similar court filing fee had I gone to court.

(Def.'s Mem., Ex. B at 3). Pizza Hut then hired Mr. Chatman, and has employed him as a delivery driver in Chicago since August 20, 2010 (Pl.'s Mem., Ex. P at ¶ 5).

Plaintiff claims that he was employed by both Pizza Hut and a Pizza Hut franchisee owned and operated by the JGJ Defendants, and that all of the defendants violated the IWPCA and IMWL by insufficiently reimbursing delivery drivers for automobile expenses incurred in

2

the performance of their duties and failing to compensate delivery drivers for the actual time they worked each week (*Id.* at ¶¶ 37-38, 45-47). Plaintiff seeks to represent a class of "[a]ll individuals who were employed, or are currently employed, by one or more of the Defendants, its subsidiaries or affiliated companies in the state of Illinois, as delivery drivers or any other similarly titled position any time during the relevant statute of limitations period." (*Id.* at ¶ 24). Relying upon the Arbitration Provision, Pizza Hut seeks an order staying this action and compelling Mr. Chatman to arbitrate "all claims against Pizza Hut in individual arbitration proceedings" (Def.'s Mem. at 4).

## II.

As a preliminary matter, this Court must address an issue not raised by the parties: whether 28 U.S.C. § 636 authorizes us to issue an order to resolve this motion, or whether instead we must issue a report and recommendation. The answer to this question turns on whether motions to compel arbitration are deemed dispositive or nondispositive for purposes of 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72. Motions to stay litigation pending the resolution of arbitration are not among the dispositive motions identified in Section 636(b)(1)(A). Moreover, the only federal appeals court to have addressed the issue, the First Circuit, concluded that a "federal court's ruling on a motion to stay litigation pending arbitration is not dispositive" because "the court still retains authority to dissolve the stay or, after the arbitration has run its course, to make orders with respect to the arbitral award." *PowerShare, Inc. v. Syntel, Inc.,* 597 F.3d 10, 14 (1st Cir. 2010) (citations omitted). A number of district courts have considered this question, and are divided.[1] In the absence of guidance from the

---

[1] Some have found motions to compel arbitration to be nondispositive. *See, e.g., Moore v. Chuck Stevens Auto., Inc.,* No. CA 1:12-00663-KD-C, 2013 WL 627232, at *1 & n.3 (S.D. Ala. Feb. 20, 2013); *Neb. Mach. Co. v. Cargotec Solutions, LLC,* No. 8:12CV394, 2013 WL 310640, at *9 n.1 (D. Neb. Jan. 25, 2013) (agreeing with *PowerShare* and *Wilken* but collecting cases on both sides); *Painters Dist. Council 16, Local Union 294 v. Color*

Seventh Circuit, we find the First Circuit's analysis persuasive and follow it. Consequently, we find the present motion to compel arbitration nondispositive and issue this decision as an order.

### III.

The Federal Arbitration Act (the "FAA") governs the question of arbitrability. *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995). The FAA provides that "a written provision . . . in a contract . . . to settle by arbitration a controversy . . . arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Employment contracts, with the exception of those involving transportation workers, are covered by the FAA. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113, 119 (2001)).

That Act "declare[s] a national policy favoring arbitration," *Nitro–Lift Techs., L.L.C. v. Howard*, ___ U.S. ___, 133 S. Ct. 500, 503, 184 L.Ed.2d 328 (2012) (per curiam) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)), and reflects "the fundamental principle that arbitration is a matter of contract," *AT & T Mobility LLC v. Concepcion*, ___ U.S. ___, 131 S. Ct. 1740, 1745, 179 L.Ed.2d 742 (2011) (internal citations and quotation marks omitted). "[W]hen a contract contains an arbitration clause, a strong presumption in favor of arbitration exists and courts have no choice but to order arbitration unless it may be said with positive assurance that

---

*New Co.*, No. 12-cv-0570 LJO-BAM, 2012 WL 3235101, at *1 n.1 (E.D. Cal. Aug. 6, 2012) (collecting cases); *Wilken Partners, L.P. v. Champps Operating Corp.*, No. 11–cv–1005–EFM–KGG, 2011 WL 1257480, at *1 (D. Kan. Apr. 4, 2011); *All Saint's Brands, Inc. v. Brewery Grp. Denmark, A/S*, 57 F. Supp. 2d 825, 833 (D. Minn. 1999); *SDD99, Inc. v. ASA Int'l, Ltd.*, No. 06–CV–6089CJS, 2007 WL 952046, at *2 n.2 (W.D.N.Y. Mar. 29, 2007). Others have found them dispositive. *See, e.g., Vernon v. Qwest Commc'ns Intern'l, Inc.*, No. 09-cv-01840-BBJ-CBS, 2013 WL 752155, at *3 (D. Colo. Feb. 27, 2013) (disagreeing with magistrate judge's finding that order compelling arbitration was nondispositive – "assume[d] that the motion was dispositive" and reviewed magistrate judge's ruling de novo); *BBCM, Inc. v. Health Sys. Int'l, LLC*, No. C10–0086, 2010 WL 4607917, at *1 n.1 (N.D. Iowa Nov. 4, 2010) (magistrate judge noted split of authority and issued report and recommendation "out of an abundance of caution"); *Coxcom, Inc. v. Egghead Telecom, Inc.*, No. 08-CV-698-TCK-PJC, 2009 WL 4016629, at *1 (N.D. Okl. Sept. 11, 2009) (motion to compel arbitration must be resolved by report and recommendation to the trial judge).

4

the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *CK Witco Corp. v. Paper Allied Indus., Chem. & Energy Workers Int'l Union*, 272 F.3d 419, 421–22 (7th Cir. 2001) (citation omitted) (internal quotation marks omitted).

Under the FAA, a court will grant a motion to compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. § 4). "To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation. . . . Once it is clear, however, that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore v. Alltel Commc'ns*, LLC, 666 F.3d 1027, 1032 (7th Cir. 2012) (citations omitted).

Pizza Hut contends that the Arbitration Provision, which was part of the online employment application that Mr. Chatman signed, constitutes a valid written contract (Def.'s Mem. at 5). Mr. Chatman disagrees, contending that there was no valid agreement to arbitrate because the online application lacked consideration, and that even if valid, the arbitration clause does not apply to all defendants (Pl.'s Mem. at 4-7). Alternatively, Mr. Chatman contends that if this Court compels arbitration, we should compel Pizza Hut to arbitrate Mr. Chatman's claims on a class basis (*Id.* at 7-15). We address each of Mr. Chatman's arguments below.

### A.

We first address whether the employment application was supported by adequate consideration to constitute a valid agreement to arbitrate. Both sides agree that Illinois law governs this issue (Pl.'s Mem. at 4; Def.'s Mem. at 4). Under Illinois law, "[a]n agreement to

arbitrate is treated like any other contract." *Vassilkovska v. Woodfield Nissan, Inc.*, 830 N.E.2d 619, 623 (Ill. App. Ct. 2005). In other words, there must be "offer, acceptance and consideration." *Id.* at 624. "Consideration" is the "bargained-for exchange of promises or performances, and may consist of a promise, an act or a forbearance." *McInerney v. Charter Golf, Inc.*, 680 N.E.2d 1347, 1350 (Ill. 1997) (citing Restatement (Second) of Contracts § 71 (1981)). "'Any act or promise which is of benefit to one party or disadvantage to the other is a sufficient consideration to support a contract.'" *Carter v. SSC Odin Operating Co., LLC*, 976 N.E.2d 344, 352 (Ill. 2012) (quoting *Steinberg v. Chicago Med. Sch.*, 371 N.E.2d 634, 639 (Ill. 1977)), *cert. denied*, No. 12-1012, __ S. Ct. __, 2013 WL 522185 (Apr. 22, 2013).

Pizza Hut argues that the Arbitration Provision is supported by three forms of consideration: 1) Pizza Hut's promise to consider the plaintiff for employment; 2) Pizza Hut's obligation to submit to binding arbitration; and 3) Pizza Hut's continued employment of the plaintiff. We agree. Under Illinois law, each of these acts is sufficient to support the agreement.

*First*, where an employer promises to consider an applicant for employment in exchange for the applicant's return promise to abide by company rules upon employment – including the arbitration of all claims – there is sufficient consideration to establish a valid, enforceable contract. S*heller by Sheller v. Frank's Nursery & Crafts, Inc.*, 957 F. Supp. 150, 154 (N.D. Ill. 1997); *see Johnson v. Orkin, LLC*, No. 12 C 141, 2013 WL 828506, at *12 (N.D. Ill. Mar. 6, 2013) (finding under Illinois law, that where employment application includes an agreement to arbitrate as a condition of being considered for employment, offer, acceptance and "valid mutual consideration" support enforcement of agreement); *see also Ravenscraft v. BNP Media, Inc.*, No. 09 C 6617, 2010 WL 1541455, at *2 (N.D. Ill. Apr. 15, 2010) (finding consideration where "defendant agreed to consider plaintiff for employment if plaintiff, upon employment, agreed to

abide by company rules"); *Reineke v. Circuit City Stores, Inc.*, No. 03 C 3146, 2004 WL 442639, at *1, 5 (N.D. Ill. Mar. 8, 2004) (enforcing arbitration provision in an employment application). Pizza Hut's willingness to consider Mr. Chatman for employment thus provides the consideration needed to support the arbitration agreement.

*Second*, by continuing to employ Mr. Chatman, Pizza Hut also provided the necessary consideration. Under Illinois law, continued employment is sufficient consideration for the enforcement of employment agreements. *Melena v. Anheuser–Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006); *see also Johnson*, 2013 WL 828506, at *12 ("By continuing her employment with [the defendant], plaintiff both accepted the offer and provided the necessary consideration."); *Mecherle v. Trugreen, Inc.*, No. 12 C 1617, 2012 WL 4097221, at *5 (N.D. Ill. Sept. 14, 2012) ("Under Illinois law, continued employment after notice of an arbitration program constitutes acceptance and consideration.").

*Third*, Pizza Hut's mutual promise to arbitrate is sufficient consideration to support the arbitration agreement. "If the agreement of one party to arbitrate disputes is fully supported by the other party's agreement to do likewise, there is no need to look elsewhere in the contract for consideration for the agreement to arbitrate." *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 869 (7th Cir. 1985); *see Gen. Motors Acceptance Corp. v. Johnson*, 822 N.E.2d 30, 37-38 (Ill. App. Ct. 2004) ("proper consideration was given by way of the parties' mutual commitment to the unilateral election of arbitration"); *Aste v. Metropolitan Life Insurance Co.*, 728 N.E.2d 629, 632 (Ill. App. Ct. 2000) ("a mutual promise to arbitrate is sufficient consideration to support an arbitration agreement"); *see also Schafer v. AT & T Wireless Servs., Inc.*, No. 04-4149, 2005 WL 850459, at *3 (S.D. Ill. Apr. 1, 2005) (same).

Mr. Chatman argues that there was not a mutual promise to arbitrate, because a clause in the online application allows Pizza Hut to change its rules and policies without notice: "I further understand that if I am hired by Pizza Hut, I must abide by all the rules and policies of Pizza Hut which, other than the at-will employment policy, may be changed without notice at the direction of Pizza Hut" (Def.'s Mem., Ex. B at 4). Mr. Chatman argues that this "escape clause," as he dubs it, allows Pizza Hut to unilaterally alter its promise to arbitrate without notice, rendering its promise illusory. (Pl.'s Mem. at 5). This argument fails for several reasons.

To begin with, even if this clause were read in the way plaintiff suggests, there still would be ample consideration to support the arbitration agreement: the promise by Pizza Hut to consider the employment application, and its continued employment of Mr. Chatman. Moreover, Pizza Hut disavows Mr. Chatman's interpretation of the clause. Pizza Hut instead says that this clause, which is separate from the Arbitration Provision in the online application, is "an unrelated passage in a wholly distinct section" that pertains only to its ability "to change rules and policies of employment completely unrelated to arbitration." (Def.'s Reply at 4). Thus, Pizza Hut concedes that the arbitration clause applies to it no less than it applies to Mr. Chatman.

Indeed, a recent Northern District case, *Collier v. Real Time Staffing Services, Inc.*, No. 11 C 6209, 2012 WL 1204715, at *2 (N.D. Ill. Apr. 11, 2012), addressed – and rejected – an argument similar to that raised by Mr. Chatman. There, the plaintiff applied for a job with the defendant by completing an online job application, which contained a "Mutual Agreement to Arbitrate." *Id.* at *1. In addition, the plaintiff signed an acknowledgment stating that if hired, his employment would be at-will and that the defendant was free to alter the terms and conditions of his employment at any time. *Id.* Like Mr. Chatman, Collier argued that the defendant's promise to arbitrate was illusory because the defendant retained the right to change

8

the terms and conditions of his employment. *Id.* at *3 & n.2. The court declined to hold "that employment at-will language, which is standard in most employment contracts, renders an otherwise enforceable promise to arbitrate illusory." *Id.* (citing *Tinder*, 305 F.3d at 735 (rejecting employee's claim that employer's agreement to arbitrate was "illusory because [the employer] reserved the right to modify or terminate its policies at any time")); *see also White v. Four B Corp.*, No. 11-2416-JWL, 2011 WL 4688843, at * 3 (D. Kan. Oct. 5, 2011) (provision allowing defendant to change rules and regulations does not render arbitration agreement illusory where arbitration agreement was in an entirely separate provision of the application than the one concerning the company rules and regulations). We, too, doubt that this clause applies to the Arbitration Provision, and we decline to hold that it renders Pizza Hut's agreement to arbitrate illusory. And, if there were any doubt, it has been eliminated by Pizza Hut's concession.

The lone case on which Mr. Chatman relies, *Geiger v. Ryan's Family Steak House, Inc.*, 134 F. Supp. 2d 985, 1000-01 (S.D. Ind. 2001), offers facts far afield from those in the present case. *Geiger* involved a complicated three-way contracting arrangement, rather than a direct agreement between employer and employee, and we deem it inapposite to the present case. In *Geiger*, the employer and employee each separately signed agreements with an arbitration service. *Id.* at 989, 992 & n.2, 994. Although the employee's arbitration agreement stated that it was in effect for the employee's term of employment and could only be terminated by agreement between the employee and the arbitration service, the defendant could cancel its contract with the arbitration service and easily escape its arbitration obligations, upon ten days' written notice. *Id.* at 1000. Not surprisingly, the court found that the plaintiff's agreement with the arbitration company was not supported by adequate consideration. *Id.* at 1001.

The convoluted arrangement in *Geiger* bears no resemblance to the agreement in the present case, which is straightforward: Mr. Chatman signed an employment application that contained an arbitration clause, with language that purports to bind the two parties to the agreement – the job applicant and Pizza Hut: "*Pizza Hut and I* agree to use confidential binding arbitration" (Def.'s Mem., Ex. B at 3) (emphasis added). This provision applies equally to Pizza Hut and the applicant and does not involve a third-party to the contract. *See Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 755, 759 (7th Cir. 2001) (the same complicated three-party arrangement as the one in *Geiger* was "quite a different animal" than the "typical case in which an employer and employee agree to arbitrate their disputes"); *Feltner v. Bluegreen Corp.*, No. IP 02-0873-C-M/S, 2002 WL 31399106, at *5 (S.D. Ind. Oct. 8, 2002) (finding *Geiger* inapplicable to agreement between employee and employer, in which both parties promised to arbitrate disputes). Where, as here, the agreement to arbitrate binds both parties, the mutual promises supply sufficient consideration to support the agreement.

In sum, more than sufficient consideration supports the Arbitration Provision here, so we find that the Arbitration Provision constitutes a valid written arbitration agreement. In addition, Pizza Hut asserts that Mr. Chatman's claims fall squarely within the scope of the Arbitration Provision and that it has not waived its right to seek arbitration of these issues (Def.'s Mem. at 10-11). Mr. Chatman did not address these assertions. Consequently, we find that the requirements for compelling arbitration have been satisfied. *See Zurich Am. Ins.*, 417 F.3d at 687.

### B.

Once we have found that a valid agreement to arbitrate exists, we turn to the parties' dispute over whether that agreement compels or prohibits class arbitration (Def.'s Mem. at 11-

12; Def.'s Reply at 5-15; Pl.'s Mem. at 7-15). Pizza Hut contends that because the Arbitration Provision does not mention class arbitration, the case must proceed to individual arbitration only, based on *Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S. Ct. 1758, 1775 (2010) and *AT&T Mobility LLC v. Concepcion*, ___ U.S. ___, 131 S. Ct. 1740, 1751 (2011). These cases, Pizza Hut argues, dictate that a party may be compelled to submit to class arbitration only where there is a "contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielson*, 130 S. Ct. at 1775 (emphasis in original). In contrast, Mr. Chatman asserts that if the Court compels arbitration, it must compel arbitration on a class-wide basis because the Arbitration Provision states that the parties agree to arbitration of "any claims that arise" between Pizza Hut and their current or former employees. Mr. Chatman contends that by drafting the provision broadly to encompass "any claims," Pizza Hut included language that encompasses class actions.

Again, we confront a threshold question for which the caselaw is unsettled: whether a court or an arbitrator should decide whether the arbitration agreement allows class arbitration. Neither party briefed this issue, beyond Mr. Chatman's acknowledgment that this is an open question in this circuit (Pl.'s Mem. at 7 n.1), and Pizza Hut's request that "[s]hould this Court decide, however, that the class issue is for the arbitrator to decide, . . .that the Court nevertheless compel arbitration and leave the resolution of this issue to the arbitrator" (Def.'s Mem. at 12). In *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 451-53 (2003), a plurality of the Supreme Court concluded that this was a question of procedural arbitrability that an arbitrator, not a court, should decide; but, the question remains open because there was no majority for this view. The decision in *Stolt-Nielson* did not clarify the Court's view on this matter, because there the parties had agreed to submit the question of class arbitrability to the arbitrators. 130 S. Ct. at 1765-66.

Nor has the Seventh Circuit addressed this precise question, so district courts in the Northern District have weighed in and are divided on the issue. *Compare Price v. NCR Corp.*, No. 12 C 3414, 2012 WL 6103205, at \*4-8 (N.D. Ill. Dec. 10, 2012) (whether agreement permits class arbitration is a question of procedural arbitrability for the arbitrator to decide); *Collier*, 2012 WL 1204715, at \*3-5 (same), *with Corrigan v. Domestic Linen Supply Co., Inc.*, No. 12 C 0575, 2012 WL 2977262, at \*4 (N.D. Ill. July 20, 2012) ("It is for courts, not arbitrators, to decide whether class claims are able to proceed"); *Goodale v. George S. May Int'l Co.*, No. 10 C 5733, 2011 WL 1337349, at \*2 (N.D. Ill. Apr. 5, 2011) (interpreted *Stolt-Nielson* to bar class arbitration where agreement was "silent with respect to class arbitration" – referred only individual claims to arbitration); *Watkins v. New Koosharem Corp.*, No. 11 C 5210 (N.D. Ill. Mar. 9, 2012) (order compelling arbitration of plaintiff's individual claims, but allowing class claim to proceed in district court because arbitration agreement was silent as to class disputes). *See also State Farm Fire & Cas. Co. v. Pentair, Inc.*, No. 11 CV 06077, 2012 WL 3904104, at \*2-4 (N.D. Ill. Sept. 7, 2012) (referred to arbitrator question of whether claims could be aggregated under the parties' arbitration agreement).

We find the reasoning in *Price* most persuasive and helpful in resolving the case at hand. In *Price*, Judge Castillo analyzed an arbitration provision quite similar to the provision at issue here. As in the present case, the defendant had argued that because the agreement did not make specific reference to class arbitration, the parties did not agree to arbitrate class claims and therefore the court could only refer individual claims to the arbitrator. 2012 WL 6103205, at \*3. The plaintiff, on the other hand, contended that the agreement "explicitly" allowed him to arbitrate class claims because it called for the arbitration of "every possible claim" arising out of his employment. *Id.*

12

Recognizing that neither the Supreme Court nor the Seventh Circuit had resolved the issue of whether the question of class arbitration was one of procedural arbitrability for the arbitrator or one of substantive arbitrability for a court to decide, Judge Castillo relied upon two Seventh Circuit cases that addressed the question in the context of consolidated arbitration: *Empl's Ins. Co. of Wausau v. Century Indem. Co.*, 443 F.3d 573 (7th Cir. 2006) and *Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635 (7th Cir. 2011).[2] In *Employers Insurance*, the Seventh Circuit held that "the question of whether an arbitration agreement forbids consolidated arbitration is a procedural one, which the arbitrator should resolve." 443 F.3d at 577. In *Blue Cross Blue Shield*, the Seventh Circuit reaffirmed that arbitrators have the discretion to interpret an arbitration contract to analyze whether it allows consolidated arbitration. 671 F.3d at 640.[3] Guided by these decisions and the reasoning of Judge Lefkow in *Collier*, 2012 WL 1204715, at *5, and Judge Chang in *Pentair*, 2012 WL 3904104, at *3, Judge Castillo held that question of whether the arbitration agreement permitted class arbitration was one for the arbitrator to decide. We find the reasoning of these cases persuasive, so we join them in finding that it is up to the arbitrator to resolve the question of whether the agreement at issue allows class arbitration of the issues covered by the arbitration provision.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant Pizza Hut's motion to compel arbitration, but leaves it for the arbitrator to determine whether to arbitrate individually or on a class-wide basis. Because the arbitration agreement is between Mr. Chatman and Pizza Hut alone, our order compelling arbitration does not apply to the JGJ defendants.

---

[2] Consolidated arbitration resembles consolidated litigation in that it involves two or more cases that share common questions of law or fact being decided in a single proceeding. *Cf.* Fed. R. Civ. P. 42(a).

[3] In this case, the Seventh Circuit discussed some distinctions between class actions and consolidation of suits, highlighting the more stringent procedural requirements for class actions. *Blue Cross Blue Shield*, 671 F.3d at 640.

In accordance with section 3 of the FAA, the Court stays the case against Pizza Hut pending arbitration. 9 U.S.C. § 3. There may be a basis for exercising our discretion to stay the entire proceeding.[4] However, at this time, we deny without prejudice Pizza Hut's motion to stay the proceeding with respect to all parties because none of those other parties – neither Mr. Chatman nor the JGJ Defendants – has expressed any view on the issue. We will set a status to meet with the parties to determine the best course of action with respect to the claims against the JGJ Defendants.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATE: May 23, 2013

---

[4] *See Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 n.23 (1983) ("In some cases, . . ., it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket."); *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 972 (7th Cir. 2007) ("In many instances, . . ., district courts may actually prefer to stay the balance of the case in the hope that the arbitration might help resolve, or at least shed some light on the issues remaining in federal court."); *Tarrson v. BLC Partners*, No. 01 C 7761, 2003 WL 732391, at *6 (N. D. Ill. Feb. 14, 2003) (staying proceedings with respect to all parties).

14